**E-FILED**
Wednesday, 29 May, 2013  01:17:42 PM
Clerk, U.S. District Court, ILCD

### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **TAMATHA HAUSMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | No. 3:2013-cv-03107-RM-BGC |
| **v.** | ) | **Judge Richard Mills** |
| | ) | **Magistrate Judge Byron Cudmore** |
| **CARGILL MEAT SOLUTIONS CORP.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ANSWER TO VERIFIED COMPLAINT

Defendant Cargill Meat Solutions Corporation ("CMSC"), by its attorneys, Meckler Bulger Tilson Marick & Pearson LLP, and for its Answer to Verified Complaint hereby states as follows:

## COUNT I
### *(Illinois Common Law Retaliatory Discharge - Compensatory Damages)*

1. Defendant Cargill Meat Solutions, Corporation is a national company, incorporated in Delaware, which maintains its headquarters at 151 N. Main Street, Wichita, Kansas.

**ANSWER:**     CMSC admits the allegations of paragraph 1.

2. Defendant operates a pork processing facility in Beardstown, Illinois, located in Cass County, Illinois.

**ANSWER:**     CMSC admits the allegations of paragraph 2.

3. Plaintiff is a resident and citizen of Mason County, Illinois.

**ANSWER:**     CMSC admits that its employment records reflect that Plaintiff resided in Mason County, Illinois during her employment.

1

4.     Defendant is incorporated in Delaware and doing business in Sangamon County.

**ANSWER:**     CMSC admits the allegations of paragraph 4.

5.     Venue is proper in the Circuit Court for the Seventh Judicial District, Sangamon County, Illinois as defendant is doing business in Sangamon County and the unlawful actions alleged herein were committed, *inter alia,* in Sangamon County, Illinois.

**ANSWER:**     CMSC denies the allegations of paragraph 5.

6.     But for defendant's illegal and retaliatory actions plaintiff would have continued to be employed by defendant in Illinois.

**ANSWER:**     CMSC denies the allegations of paragraph 6.

7.     Beginning in January 2008, plaintiff was employed by defendant processing pork at defendant's plant at 8295 Arenzville Road, Beardstown, Illinois.

**ANSWER:**     CMSC admits the allegations of paragraph 7.

8.     Plaintiff, at relevant intervals received periodic raises times [sic], and at all relevant times Plaintiff met or exceeded defendant's reasonable job and performance expectations.

**ANSWER:**     CMSC admits that Plaintiff received periodic pay increases during her employment.  Except as specifically admitted, CMSC denies the allegations of paragraph 8.

9.     Plaintiff was cross-trained on multiple duties and jobs at the defendant's Beardstown plant.

**ANSWER:**     CMSC admits the allegations of paragraph 9.

10.     On or about November 14, 2011, one or more shipments (truck loads) of meat were returned by one of defendant's customers to defendant's Beardstown meat processing plant.

**ANSWER:**     CMSC admits the allegations of paragraph 10.

11.  At or near the time that the shipments of meat which were returned to defendant's plant arrived at defendant's Beardstown plant plaintiff was working for defendant.

**ANSWER:**  CMSC admits the allegations of paragraph 11.

12.  On or about November 14, 2011, plaintiff was working at defendant's plant and became aware that one or more truckloads of meat had been returned to defendant.

**ANSWER:**  CMSC admits the allegations of paragraph 12.

13.  All or large portions of the meat that was returned by defendant's customer on or about November 14, 2011 was unfit and unsafe for human consumption.

**ANSWER:**  CMSC lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 12, and therefore denies them.

14.  Plaintiff observed and became aware that portions of the returned meat were spoiled, black, slimy and exuding the recognizable and foul odor of rancid and decomposing meat.

**ANSWER:**  CMSC admits that portions of the returned meat were slimy and exuded a foul odor.  CMSC lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations regarding what she "observed" or "became aware" of and, therefore, denies them.  Except as specifically admitted, CMSC denies the remaining allegations contained in paragraph 14.

15.  Defendant instructed a number of defendant's employees to work with and around the returned meat; one or more of plaintiff's co-workers who were working with or around the returned meat became physically ill and nauseous.

**ANSWER:**  CMSC admits some of its employees were instructed to work with and around the meat.  Except as specifically admitted, CMSC denies the allegations of paragraph 15.

16.    Plaintiff believed and was informed by defendant's managerial employees that the returned meat was from semi-tractor trailer trucks, which had attempted to deliver the meat to one of defendant's customers in Texas; plaintiff was informed the customer refused delivery of the meat and the meat was then returned to defendant's Beardstown plant.

**ANSWER:**    CMSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding what Plaintiff "believed" and "was informed" of in paragraph 16, and therefore denies the allegations of paragraph 16.

17.    The packaging information on the returned meet [sic] showed an expiration date of October 26, 2011; plaintiff observed that defendant instructed employees to sort and repackage portions of the returned meat after the expiration date that appeared on the returned meat.

**ANSWER:**    CMSC denies the allegations of paragraph 17.

18.    Defendant instructed plaintiff and other employees to sort and repackage the meat for the purpose of preparing portions of the meat for apparent distribution to other customers of defendant.

**ANSWER:**    CMSC denies the allegations of paragraph 18.

19.    Plaintiff believed the meat that was being sorted and repackaged was past its expiration date and that the meat was unsafe and not fit for human consumption.

**ANSWER:**    CMSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding what Plaintiff "believed," and therefore denies the allegations of paragraph 19.

20.    Plaintiff observed one or more of defendant's "Quality Assurance" employees (a/k/a "orange hats") conduct an informal and unscientific process to determine what portions of the returned meat would be repackaged and prepared for apparent sale to consumers.

**ANSWER:**    CMSC denies the allegations of paragraph 20.

21.    The informal process used by defendant's "Quality Assurance" employees was to visually inspect the meat, smell the meat, and by some "smell test" purport to determine whether

4

the meat would be repackaged for apparent sale to consumers.

**ANSWER:**  CMSC admits that some of its employees visually inspected and smelled the meat.  Except as specifically admitted, CMSC denies the allegations of paragraph 21.

22.  Plaintiff observed defendant's "Quality Assurance" employees standing over tubs or containers of returned meat and unscientifically attempting to separate the meat; the separated meat was either placed in a tub to be repackaged and apparently ultimately sold to consumers or placed in a second tub to be packaged for what plaintiff was informed would be pet food.

**ANSWER:**  CMSC denies the allegations of paragraph 22.

23.  Plaintiff went to defendant's managers and verbally expressed her strong objection to the process of repackaging meat, a process plaintiff thought to be unsafe and illegal; plaintiff subsequently notified the US Department of Agriculture ("USDA") inspector on site of plaintiff's concerns that meat that was unfit and unsafe for human consumption was being repackaged by defendant and was apparently being prepared to be placed into the stream of commerce for human consumption.

**ANSWER:**  CMSC admits that Plaintiff complained about the meat to CMSC's managers and an inspector on site from the US Department of Agriculture ("USDA").  Except as specifically admitted, CMSC denies the allegations of paragraph 23.

24.  Plaintiff, as part of her objection to the repackaging process, asked the USDA inspector, *"would you feed this meat to your family?"* In response to plaintiff's objection, the USDA inspector temporarily shut down the line repackaging the returned meat.

**ANSWER:**  CMSC lacks knowledge or information sufficient to form a belief as to the truth of the first sentence of paragraph 24, and therefore denies it.  CMSC denies the remaining allegations of paragraph 24.

25.  Some time subsequent to plaintiff's verbal objection to the USDA inspector and the shut down of the repackaging process, the process of repackaging the returned meat was restarted by defendant's managerial and supervisory employees.

**ANSWER:**    CMSC denies the allegations of paragraph 25.

26.    Plaintiff believes that some portion of the meat, determined by defendant's employees to be acceptable, was repackaged and prepared to be sold to defendant's other customers and ultimately sold to consumers.

**ANSWER:**    CMSC lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding what Plaintiff "believes," and therefore denies the allegations of paragraph 26.

27.    While plaintiff observed the returned meat being repackaged and prepared for sale to customers and ultimately consumers, plaintiff has no direct knowledge that defendant actually sold the meat or whether after becoming aware of plaintiff's objections and subsequent report to the USDA defendant abandoned its apparent intent to sell the meat to customers and ultimately to consumers.

**ANSWER:**    CMSC admits Plaintiff has no knowledge that defendant sold the meat to customers.  Except as specifically admitted, CMSC denies the allegations of paragraph 27.

28.    Defendant had a significant financial incentive to repackage the unfit and unsafe meat and to sell it to consumers.

**ANSWER:**    CMSC denies the allegations of paragraph 28.

29.    Plaintiff, based on conversations with defendant's managers, believes the meat determined by defendant's "Quality Assurance" employees to be unacceptable for human consumption was processed into pet food.

**ANSWER:**    CMSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29, and therefore denies it.

30.    Plaintiff, in an effort to document the unsafe and dangerous practices engaged in by defendant and to begin the process of reporting defendant's conduct, took three (3) photographs with the camera in her cellular phone; the plaintiff sought to create a visual record of the informal, unscientific, and potentially illegal process used by defendant to separate

admittedly rancid meat from meat apparently assessed by defendant to be fit for human consumption.

**ANSWER:**   CMSC admits that Plaintiff took photographs with the camera in her cellular phone.  Except as specifically admitted, CMSC denies the allegations of paragraph 30.

31.    Defendant's managerial employee(s) held a meeting on November 14, 2011 with the USDA inspector and plaintiff during which plaintiff expressed her outrage and grave concerns for public safety as regards the repackaging of meat plaintiff believe [sic] was unfit and unsafe for human consumption.

**ANSWER:**   CMSC denies the allegations of paragraph 31.

32.    At the meeting Plaintiff's supervisor and defendant's managerial employee, Lacy Hall, accused plaintiff of taking pictures of the defendant's process of repackaging the meat.

**ANSWER:**   CMSC admits that its managerial employee, Lacy Hall, asked plaintiff if she took pictures on the floor of the Beardstown facility.  Except as specifically admitted, CMSC denies the allegations of paragraph 32.

33.    Defendant resumed the process of repackaging the returned meat and plaintiff repeated her objections to a process she believed to be illegal and unsafe.

**ANSWER:**   CMSC denies the allegations of paragraph 33.

34.    After the meeting on November 14, 2011, defendant instructed plaintiff to leave work.

**ANSWER:**   CMSC denies the allegations of paragraph 34.

35.    After leaving work on November 14, 2011, plaintiff contacted the U.S. Department of Labor, Occupational Safety and Health Administration (OSHA), and the Mason County Health Department for the purpose of complaining about the process plaintiff thought was unsafe, dangerous, and illegal. The health department directed plaintiff to the US Department of Agriculture.

**ANSWER:**   CMSC lacks information or knowledge sufficient to form a belief as to the truth of paragraph 35, and therefore denies it.

36.    Plaintiff filed a complaint with the US Department of Agriculture regarding the repackaging and preparation for sale of meat which plaintiff believed was unfit for human consumption.

**ANSWER:**   CMSC admits Plaintiff filed a complaint with the US Department of Agriculture regarding the returned meat.  Except as specifically admitted, CMSC denies the allegations of paragraph 36.

37.    On November 15, 2011, plaintiff reported back to work; plaintiff was initially assigned to the line repackaging the returned and spoiled meat. Plaintiff again objected to the process and defendant's activities in repackaging meat and preparing meat for sale well past the meat's initial expiration date.

**ANSWER:**   CMSC admits that Plaintiff reported to work on November 15, 2011. CMSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff "again objected to the process" and therefore denies that allegation. Except as specifically admitted, CMSC denies the remaining allegations of paragraph 37.

38.    At approximately noon on November 15, 2011, defendant again instructed plaintiff to leave the work site; plaintiff was paid for only one-half day of work of [sic] November 15, 2011 while employees who did not object to the repackaging of the meat were paid for a full day, and on information and belief, some employees worked and were paid overtime.

**ANSWER:**   CMSC admits that employees who worked a full day on November 15, 2011, including Plaintiff, were paid for a full day.  CMSC further admits that to the extent employees worked overtime on November 15, 2011, they were paid overtime.  Except as specifically admitted, CMSC denies the allegations of paragraph 38.

39.    On November 16, 2011, plaintiff reported to work and was initially assigned to a line re-packaging the returned meat which plaintiff continued to believe to be spoiled and unfit

and unsafe for human consumption; plaintiff again objected to the process and refused to participate in an activity that she believed to be illegal and in violation of state and/or federal law regarding food packaging, food handling, and food preparation.

    **ANSWER:**    CMSC admits that Plaintiff reported to work on November 16, 2011. CMSC lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff "again objected to the process" and therefore denies it.   Except as specifically admitted, CMSC denies the remaining allegations of paragraph 39.

    40.    On November 16, 2011, after receiving plaintiffs objections, the defendant reassigned plaintiff to a different line processing fresh meat; plaintiff performed these job assignments in a manner consistent with defendant's reasonable job expectations.

    **ANSWER:**    CMSC denies the allegations of paragraph 40.

    41.    Plaintiff, while on defendant's job site, observed that the spoiled meat was "inspected" in a cursory manner and determined in an unscientific manner — a smell and visual inspection process — whether it should be repackaged and resold to defendant's customers; plaintiff further observed handling and repackaging processes that permitted unsafe contamination of areas that were required by law, rule, and regulation to remain uncontaminated.

    **ANSWER:**    CMSC denies the allegations of paragraph 41.

    42.    Plaintiff believed that the meat being repackaged and prepared for sale was well passed its expiration date and could not reasonably have been deemed fit and safe for human consumption.

    **ANSWER:**    CMSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations about what Plaintiff "believed" in paragraph 42, and therefore denies it.

    43.    Defendant's Human Resources Manager Robert Hargrove called plaintiff into a meeting and because of plaintiffs repeated objections to the defendant's process of repackaging the returned meat Hargrove made a number of threats against plaintiff; the threats against plaintiff included, *inter alia,* a threat of incarceration in federal prison, job termination, loss of plaintiff's pending workers compensation claim and "loss of everything you have."

9

**ANSWER:**     CMSC denies the allegations of paragraph 43.

44.     On November 23, 2011, plaintiff communicated with a governmental agency, the USDA, by e-mailing USDA employee and representative Mark Tevler advising him that defendant was repackaging meat, which plaintiff had reasonable cause to believe was spoiled, unsafe, and unfit for human consumption.

**ANSWER:**     CMSC admits it is aware that Plaintiff communicated with the USDA during November 2011.  CMSC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 44, and therefore denies them.

45.     On November 23, 2011 plaintiff provided the USDA with the three pictures taken by plaintiff of defendant's unsafe and potentially illegal repackaging process.

**ANSWER:**     CMSC admits it is aware that Plaintiff provided the USDA with photographs she had taken.  CMSC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 45, and therefore denies them.

46.     On November 28, 2011, defendant met with plaintiff and had in its possession the information and photographs plaintiff had previously provided to the USDA.

**ANSWER:**     CMSC denies the allegations of paragraph 46.

47.     On November 28, 2011, defendant either suspended plaintiff without pay or terminated plaintiff's employment; plaintiff never returned to work with defendant after November 28, 2011.

**ANSWER:**     CMSC admitted it suspended plaintiff without pay on November 28, 2011 and that plaintiff never returned to work with CMSC after November 28, 2011.  Except as specifically admitted, CMSC denies the allegations of paragraph 47.

48.     Several months following November 28, 2011, plaintiff received a letter dated March 14, 2012 advising her that her employment status was in jeopardy allegedly due to a claim of a lack of response to telephone calls from defendant's human resource manager Robert

Hargrove.

**ANSWER:**    CMSC admits the allegations of paragraph 48.

49.    Between November 28, 2011 to March 14, 2012, plaintiff had received no telephone calls from defendant's human resource manager; the claim by Hargrove that Hargrove had called plaintiffs phone was and is false and pretextual; the March 14, 2012 letter was created to manufacture a reason unrelated to plaintiffs protected activity to justify termination of plaintiff's employment.

**ANSWER:**    CMSC denies the allegations of paragraph 49.

50.    Plaintiff, by telephone, immediately responded to the March 14, 2012 letter and defendant instructed plaintiff to attend a meeting at the workplace.

**ANSWER:**    CMSC admits that Plaintiff responded to the March 14, 2012 letter and CMSC instructed her to attend a meeting in the workplace.   CMSC denies the remaining allegations of paragraph 50.

51.    On March 22, 2012, plaintiff attended a meeting at defendant's meat processing plant; participating in the meeting were defendant's human resource manager, supervisor Melissa Minor (a/k/a Melissa Endings) and three co-workers.

**ANSWER:**    CMSC admits the allegations of paragraph 51.

52.    At the March 22, 2012, meeting defendant through its manager informed plaintiff that her employment with defendant was terminated.

**ANSWER:**    CMSC admits the allegations of paragraph 52.

53.    Plaintiff at all times relevant hereto had a good faith and honest belief that defendant was preparing to sell meat to the public that was unfit, unsafe and dangerous for human consumption and that such sales would be in violation of statutory and common law.

**ANSWER:**    CMSC denies the allegations of paragraph 53.

54.    Defendant suspended/terminated plaintiffs employment in November 2011 and

then terminated or re-terminated plaintiffs employment in March 2012 as direct and proximate result of plaintiffs objections to defendant's repackaging and preparing for sale the returned meat, in retaliation for plaintiffs reporting to local, state, and/or federal officials plaintiffs belief that defendant was violating one or more state or federal laws, rules, and regulations.

**ANSWER:**   CMSC denies the allegations of paragraph 54.

55.    It is the strong public policy of the State of Illinois that meat packaging companies sell for human consumption only meat which is safe and fit for human consumption; this strong public policy is found, *inter alia,* in the Wholesome Meat Act of 1967, the Illinois Meat & Poultry Inspection Act (225 ILCS 650/1 et seq.), the Food Safety Modernization Act (21 USC 2201 et seq.) and the Federal Meat Inspection Act (FMIA) (21 USC 602 et seq.).

**ANSWER:**   CMSC admits that Plaintiff has cited existing Illinois and federal statutes in paragraph 55.  Except as specifically admitted, CMSC denies the allegations of paragraph 55.

56.    The State of Illinois through its Department of Agriculture regulates meat production by licensing and inspecting certain facilities to ensure consumers receive wholesome, properly identified meat and poultry products by inspecting slaughter and processing facilities.

**ANSWER:**   CMSC admits the allegations of paragraph 56.

57.    The federal government through its Department of Agriculture regulates meat production and through its enforcement of the FMIA, which specifically states: "Meat and meat food products are an important source of the Nation's total supply of food. It is essential in the public interest that the health and welfare of consumers be protected by assuring that meat and meat food products distributed are wholesome, not adulterated and properly marked, labeled, and packaged." 21 USC Section 602.

**ANSWER:**   CMSC admits the allegations of paragraph 57.

58.    The public policy which demands that food sold to consumers be safe and fit for human consumption "strikes at the heart of a citizen's social rights, duties and responsibilities."

**ANSWER:**   CMSC states that paragraph 58 is a legal conclusion to which no answer is required.  To the extent an answer is deemed necessary, CMSC denies the allegations of paragraph 58.

59.    It is the strong public policy of the State of Illinois to protect individuals from serious harm and death and such public policy can be found, *inter cilia,* in Illinois common law and multiple statutes.

**ANSWER:**    CMSC states that paragraph 59 is a legal conclusion to which no answer is required.  To the extent an answer is deemed necessary, CMSC denies the allegations of paragraph 59.

60.    Consumption of meat which is unfit and/or unsafe for human consumption may result in illness, disability, and death.

**ANSWER:**    CMSC admits the allegations of paragraph 60.

61.    Since at least 1907, the State of Illinois has passed laws regulating meat processing, which laws were and are designed to protect the public from the risk of illness, disability, and death associated with unsafe meat processing.

**ANSWER:**    CMSC admits the allegations of paragraph 61.

62.    Defendant's termination of plaintiff's employment violates the clear public policy of the State of Illinois.

**ANSWER:**    CMSC denies the allegations of paragraph 62.

63.    There is a direct and causal connection between plaintiffs taking pictures of the repackaging efforts, the objecting to the repackaging efforts, the reporting to local, state and federal officials defendant's repackaging of returned, spoiled, and rancid meat and defendant's decision to suspend and terminate plaintiffs employment.

**ANSWER:**    CMSC denies the allegations of paragraph 63.

64.    Defendant did not terminate the employment of other employees of defendant who participated without complaint in the repackaging of returned, spoiled, and rancid meat.

**ANSWER:**    CMSC admits that it has not terminated other employees who reworked the returned meat.  Except as specifically admitted, CMSC denies the remaining allegations of

paragraph 64.

65.    Defendant did not and has not suspended or terminated the employment of employees who have taken pictures inside the defendant's Beardstown plant.

**ANSWER:**    CMSC denies the allegations of paragraph 65.

66.    The reason given by defendant for the termination of plaintiff's employment was and is pretextual.

**ANSWER:**    CMSC denies the allegations of paragraph 66.

67.    Defendant did not suspend or terminate other employees who had a cellular phone inside the Beardstown plant.

**ANSWER:**    CMSC denies the allegations of paragraph 67.

68.    Defendant terminated plaintiffs employment with defendant in retaliation for and as a direct result of plaintiff objecting to the repackaging efforts, taking pictures of the repackaging efforts, providing pictures of the repackaging efforts to the USDA, and plaintiffs reporting to local, state and federal authorities her good faith belief that defendant was engaging in activity, as alleged herein, that was potentially threatening to the health, safety, and welfare of consumers and the citizens of the State of Illinois.

**ANSWER:**    CMSC denies the allegations of paragraph 68.

69.    As a direct and proximate result of defendant's retaliatory termination of plaintiff's employment, plaintiff has lost wages, income, benefits, and employment opportunities.

**ANSWER:**    CMSC denies the allegations of paragraph 69.

70.    Plaintiff suffered and continues to experience emotional distress, humiliation, embarrassment, and emotional pain and distress as a direct and proximate result of defendant's retaliatory termination of plaintiff's employment.

**ANSWER:**    CMSC denies the allegations of paragraph 70.

71.     As a direct and proximate result of defendant's retaliatory termination of plaintiff's employment, plaintiff has incurred costs and expenses in bringing and pursuing this matter.

**ANSWER:**     CMSC denies the allegations of paragraph 71.

## COUNT II
### *(Illinois Common Law Retaliatory Discharge - Punitive Damages)*

1.     Defendant Cargill Meat Solutions, Corporation is a national company, incorporated in Delaware, which maintains its headquarters at 151 N. Main Street, Wichita, Kansas.

**ANSWER:**     CMSC admits the allegations of paragraph 1.

2.     Defendant operates a pork processing facility in Beardstown, Illinois, located in Cass County, Illinois.

**ANSWER:**     CMSC admits the allegations of paragraph 2.

3.     Plaintiff is a resident and citizen of Mason County, Illinois.

**ANSWER:**     CMSC admits that its employment records reflect that Plaintiff resided in Mason County, Illinois during her employment.

4.     Defendant is incorporated in Delaware and doing business in Sangamon County.

**ANSWER:**     CMSC admits the allegations of paragraph 4.

5.     Venue is proper in the Circuit Court for the Seventh Judicial District, Sangamon County, Illinois as defendant is doing business in Sangamon County and the unlawful actions alleged herein were committed, *inter alia,* in Sangamon County, Illinois.

**ANSWER:**     CMSC denies the allegations of paragraph 5.

6.     But for defendant's illegal and retaliatory actions plaintiff would have continued to be employed by defendant in Illinois.

**ANSWER:**   CMSC denies the allegations of paragraph 6.

7.   Beginning in January 2008, plaintiff was employed by defendant processing pork at defendant's plant at 8295 Arenzville Road, Beardstown, Illinois.

**ANSWER:**   CMSC admits the allegations of paragraph 7.

8.   Plaintiff, at relevant intervals received periodic raises times [sic], and at all relevant times plaintiff met or exceeded defendant's reasonable job and performance expectations.

**ANSWER:**   CMSC admits that Plaintiff received periodic pay increases during her employment.  Except as specifically admitted, CMSC denies the allegations of paragraph 8.

9.   Plaintiff was cross-trained on multiple duties and jobs at the defendant's Beardstown plant.

**ANSWER:**   CMSC admits the allegations of paragraph 9.

10.   On or about November 14, 2011, one or more shipments (truck loads) of meat were returned by one of defendant's customers to defendant's Beardstown meat processing plant.

**ANSWER:**   CMSC admits the allegations of paragraph 10.

11.   At or near the time that the shipments of meat which were returned to defendant's plant arrived at defendant's Beardstown plant plaintiff was working for defendant.

**ANSWER:**   CMSC admits the allegations of paragraph 11.

12.   On or about November 14, 2011, plaintiff was working at defendant's plant and became aware that one or more truckloads of meat had been returned to defendant.

**ANSWER:**   CMSC admits the allegations of paragraph 12.

13.   All or large portions of the meat that was returned by defendant's customer on or about November 14, 2011 was unfit and unsafe for human consumption.

16

**ANSWER:**   CMSC lacks sufficient knowledge or information to form a belief as to

the truth of the allegations of paragraph 12, and therefore denies them.


14.   Plaintiff observed and became aware that portions of the returned meat were spoiled, black, slimy and exuding the recognizable and foul odor of rancid and decomposing meat.

**ANSWER:**   CMSC admits that portions of the returned meat were slimy and exuded a

foul odor.  CMSC lacks knowledge or information sufficient to form a belief as to the truth of

Plaintiff's allegations regarding what she "observed" or "became aware" of and, therefore,

denies them.  Except as specifically admitted, CMSC denies the remaining allegations contained

in paragraph 14.


15.   Defendant instructed a number of defendant's employees to work with and around the returned meat; one or more of plaintiff's co-workers who were working with or around the returned meat became physically ill and nauseous.

**ANSWER:**   CMSC admits some of its employees were instructed to work with and

around the meat.  Except as specifically admitted, CMSC denies the allegations of paragraph 15.


16.   Plaintiff believed and was informed by defendant's managerial employees that the returned meat was from semi-tractor trailer trucks, which had attempted to deliver the meat to one of defendant's customers in Texas; plaintiff was informed the customer refused delivery of the meat and the meat was then returned to defendant's Beardstown plant.

**ANSWER:**   CMSC lacks knowledge or information sufficient to form a belief as to

the truth of the allegations regarding what Plaintiff "believed" and "was informed" of in

paragraph 16, and therefore denies the allegations of paragraph 16.


17.   The packaging information on the returned meet [sic] showed an expiration date of October 26, 2011; plaintiff observed that defendant instructed employees to sort and repackage portions of the returned meat after the expiration date that appeared on the returned meat.

17

**ANSWER:**   CMSC denies the allegations of paragraph 17.

18.   Defendant instructed plaintiff and other employees to sort and repackage the meat for the purpose of preparing portions of the meat for apparent distribution to other customers of defendant.

**ANSWER:**   CMSC denies the allegations of paragraph 18.

19.   Plaintiff believed the meat that was being sorted and repackaged was past its expiration date and that the meat was unsafe and not fit for human consumption.

**ANSWER:**   CMSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding what Plaintiff "believed," and therefore denies the allegations of paragraph 19.

20.   Plaintiff observed one or more of defendant's "Quality Assurance" employees (a/k/a "orange hats") conduct an informal and unscientific process to determine what portions of the returned meat would be repackaged and prepared for apparent sale to consumers.

**ANSWER:**   CMSC denies the allegations of paragraph 20.

21.   The informal process used by defendant's "Quality Assurance" employees was to visually inspect the meat, smell the meat, and by some "smell test" purport to determine whether the meat would be repackaged for apparent sale to consumers.

**ANSWER:**   CMSC admits that some of its employees visually inspected and smelled the meat.  Except as specifically admitted, CMSC denies the allegations of paragraph 21.

22.   Plaintiff observed defendant's "Quality Assurance" employees standing over tubs or containers of returned meat and unscientifically attempting to separate the meat; the separated meat was either placed in a tub to be repackaged and apparently ultimately sold to consumers or placed in a second tub to be packaged for what plaintiff was informed would be pet food.

**ANSWER:**   CMSC denies the allegations of paragraph 22.

23.     Plaintiff went to defendant's managers and verbally expressed her strong objection to the process of repackaging meat, a process plaintiff thought to be unsafe and illegal; plaintiff subsequently notified the US Department of Agriculture ("USDA") inspector on site of plaintiff's concerns that meat that was unfit and unsafe for human consumption was being repackaged by defendant and was apparently being prepared to be placed into the stream of commerce for human consumption.

**ANSWER:**  CMSC admits that Plaintiff complained about the meat to CMSC's

managers and an inspector on site from the US Department of Agriculture ("USDA").  Except

as specifically admitted, CMSC denies the allegations of paragraph 23.

24.     Plaintiff, as part of her objection to the repackaging process, asked the USDA inspector, *"would you feed this meat to your family?"*  In response to plaintiff's objection, the USDA inspector temporarily shut down the line repackaging the returned meat.

**ANSWER:**  CMSC lacks knowledge or information sufficient to form a belief as to

the truth of the first sentence of paragraph 24, and therefore denies it.  CMSC denies the

remaining allegations of paragraph 24.

25.     Some time subsequent to plaintiff's verbal objection to the USDA inspector and the shut down of the repackaging process, the process of repackaging the returned meat was restarted by defendant's managerial and supervisory employees.

**ANSWER:**  CMSC denies the allegations of paragraph 25.

26.     Plaintiff believes that some portion of meat, determined by defendant's employees to be acceptable, was repackaged and prepared to be sold to defendant's other customers and ultimately sold to consumers.

**ANSWER:**  CMSC lacks information or knowledge sufficient to form a belief as to

the truth of the allegations regarding what Plaintiff "believes," and therefore denies the

allegations of paragraph 26.

27.     While plaintiff observed the returned meat being repackaged and prepared for sale to customers and ultimately consumers, plaintiff has no direct knowledge that defendant

actually sold the meat or whether after becoming aware of plaintiff's objections and subsequent report to the USDA defendant abandoned its apparent intent to sell the meat to customers and ultimately to consumers.

**ANSWER:**  CMSC admits Plaintiff has no knowledge that defendant sold the meat to

customers.  Except as specifically admitted, CMSC denies the allegations of paragraph 27.

28.  Defendant had a significant financial incentive to repackage the unfit and unsafe meat and to sell it to consumers.

**ANSWER:**  CMSC denies the allegations of paragraph 28.

29.  Plaintiff, based on conversations with defendant's managers, believes the meat determined by defendant's "Quality Assurance" employees to be unacceptable for human consumption was processed into pet food.

**ANSWER:**  CMSC lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 29, and therefore denies it.

30.  Plaintiff, in an effort to document the unsafe and dangerous practices engaged in by defendant and to begin the process of reporting defendant's conduct, took three (3) photographs with the camera in her cellular phone; the plaintiff sought to create a visual record of the informal, unscientific, and potentially illegal process used by defendant to separate admittedly rancid meat from meat apparently assessed by defendant to be fit for human consumption.

**ANSWER:**  CMSC admits that Plaintiff took photographs with the camera in her

cellular phone.  Except as specifically admitted, CMSC denies the allegations of paragraph 30.

31.  Defendant's managerial employee(s) held a meeting on November 14, 2011 with the USDA inspector and plaintiff during which plaintiff expressed her outrage and grave concerns for public safety as regards the repackaging of meat plaintiff believe [sic] was unfit and unsafe for human consumption.

**ANSWER:**  CMSC denies the allegations of paragraph 31.

32.  At the meeting Plaintiff's supervisor and defendant's managerial employee, Lacy Hall, accused plaintiff of taking pictures of the defendant's process of repackaging the meat.

**ANSWER:**   CMSC admits that its managerial employee, Lacy Hall, asked plaintiff if she took pictures on the floor of the Beardstown facility.   Except as specifically admitted, CMSC denies the allegations of paragraph 32.

33.   Defendant resumed the process of repackaging the returned meat and plaintiff repeated her objections to a process she believed to be illegal and unsafe.

**ANSWER:**   CMSC denies the allegations of paragraph 33.

34.   After the meeting on November 14, 2011, defendant instructed plaintiff to leave work.

**ANSWER:**   CMSC denies the allegations of paragraph 34.

35.   After leaving work on November 14, 2011, plaintiff contacted the U.S. Department of Labor, Occupational Safety and Health Administration (OSHA), and the Mason County Health Department for the purpose of complaining about the process plaintiff thought was unsafe, dangerous and illegal.   The health department directed plaintiff to the US Department of Agriculture.

**ANSWER:**   CMSC lacks information or knowledge sufficient to form a belief as to the truth of paragraph 35, and therefore denies it.

36.   Plaintiff filed a complaint with the US Department of Agriculture regarding the repackaging and preparation for sale of meat which plaintiff believed was unfit for human consumption.

**ANSWER:**   CMSC admits Plaintiff filed a complaint with the US Department of Agriculture regarding the returned meat.   Except as specifically admitted, CMSC denies the allegations of paragraph 36.

37.   On November 15, 2011, plaintiff reported back to work; plaintiff was initially assigned to the line repackaging the returned and spoiled meat. Plaintiff again objected to the process and defendant's activities in repackaging meat and preparing meat for sale well past the meat's initial expiration date.

**ANSWER:**   CMSC admits that Plaintiff reported to work on November 15, 2011.

CMSC lacks knowledge or information sufficient to form a belief as to the truth of the

allegations that Plaintiff "again objected to the process" and therefore denies that allegation.

Except as specifically admitted, CMSC denies the remaining allegations of paragraph 37.

38.     At approximately noon on November 15, 2011, defendant again instructed
plaintiff to leave the work site; plaintiff was paid for only one-half day of work of [sic]
November 15, 2011 while employees who did not object to the repackaging of the meat were
paid for a full day, and on information and belief, some employees worked and were paid
overtime.

**ANSWER:**   CMSC admits that employees who worked a full day on November 15,

2011, including Plaintiff, were paid for a full day.  CMSC further admits that to the extent

employees worked overtime on November 15, 2011, they were paid overtime.  Except as

specifically admitted, CMSC denies the allegations of paragraph 38.

39.     On November 16, 2011, plaintiff reported to work and was initially assigned to a
line re-packaging the returned meat which plaintiff continued to believe to be spoiled and unfit
and unsafe for human consumption; plaintiff again objected to the process and refused to
participate in an activity that she believed to be illegal and in violation of state and/or federal
law regarding food packaging, food handling, and food preparation.

**ANSWER:**   CMSC admits that Plaintiff reported to work on November 16, 2011.

CMSC lacks knowledge or information sufficient to form a belief as to the truth of the

allegation that Plaintiff "again objected to the process" and therefore denies it.  Except as

specifically admitted, CMSC denies the remaining allegations of paragraph 39.

40.     On November 16, 2011, after receiving plaintiff's objections, the defendant
reassigned plaintiff to a different line processing fresh meat; plaintiff performed these job
assignments in a manner consistent with defendant's reasonable job expectations.

**ANSWER:**   CMSC denies the allegations of paragraph 40.

41.     Plaintiff, while on defendant's job site, observed that the spoiled meat was

22

"inspected" in a cursory manner and determined in an unscientific manner – a smell and visual inspection process – whether it should be repackaged and resold to defendant's customers; plaintiff further observed handling and repackaging processes that permitted unsafe contamination of areas that were required by law, rule, and regulation to remain uncontaminated.

**ANSWER:**    CMSC denies the allegations of paragraph 41.

42.    Plaintiff believed that the meat being repackaged and prepared for sale was well passed its expiration date and could not reasonably have been deemed fit and safe for human consumption.

**ANSWER:**    CMSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations about what Plaintiff "believed" in paragraph 42, and therefore denies it.

43.    Defendant's Human Resources Manager Robert Hargrove called plaintiff into a meeting and because of plaintiff's repeated objections to the defendant's process of repackaging the returned meat Hargrove made a number of threats against plaintiff; the threats against plaintiff included, *inter alia*, a threat of incarceration in federal prison, job termination, loss of plaintiff's pending workers compensation claim and "loss of everything you have."

**ANSWER:**    CMSC denies the allegations of paragraph 43.

44.    On November 23, 2011, plaintiff communicated with a governmental agency, the USDA, by e-mailing USDA employee and representative Mark Tevler advising him that defendant was repackaging meat, which plaintiff had reasonable cause to believe was spoiled, unsafe, and unfit for human consumption.

**ANSWER:**    CMSC admits it is aware that Plaintiff communicated with the USDA during November 2011.  CMSC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 44, and therefore denies them.

45.    On November 23, 2011 plaintiff provided the USDA with the three pictures taken by plaintiff of defendant's unsafe and potentially illegal repackaging process.

**ANSWER:**    CMSC admits it is aware that Plaintiff provided the USDA with

photographs she had taken.  CMSC lacks knowledge or information sufficient to form a belief

as to the truth of the remaining allegations of paragraph 45, and therefore denies them.

46.    On November 28, 2011, defendant met with plaintiff and had in its possession the information and photographs plaintiff had previously provided to the USDA.

**ANSWER:**    CMSC denies the allegations of paragraph 46.

47.    On November 28, 2011, defendant either suspended plaintiff without pay or terminated plaintiff's employment; plaintiff never returned to work with defendant after November 28, 2011.

**ANSWER:**    CMSC admitted it suspended plaintiff without pay on November 28, 2011

and that plaintiff never returned to work with CMSC after November 28, 2011.  Except as

specifically admitted, CMSC denies the allegations of paragraph 47.

48.    Several months following November 28, 2011, plaintiff received a letter dated March 14, 2012 advising her that her employment status was in jeopardy allegedly due to a claim of a lack of response to telephone calls from defendant's human resource manager Robert Hargrove.

**ANSWER:**    CMSC admits the allegations of paragraph 48.

49.    Between November 28, 2011 to March 14, 2012, plaintiff had received no telephone calls from defendant's human resource manager; the claim by Hargrove that Hargrove had called plaintiff's phone was and is false and pretextual; the March 14, 2012 letter was created to manufacture a reason unrelated to plaintiff's protected activity to justify termination of plaintiff's employment.

**ANSWER:**    CMSC denies the allegations of paragraph 49.

50.    Plaintiff, by telephone, immediately responded to the March 14, 2012 letter and defendant instructed plaintiff to attend a meeting at the workplace.

**ANSWER:**    CMSC admits that Plaintiff responded to the March 14, 2012 letter and

CMSC instructed her to attend a meeting in the workplace.  CMSC denies the remaining

allegations of paragraph 50.

51.    On March 22, 2012, plaintiff attended a meeting at defendant's meat processing plant; participating in the meeting were defendant's human resource manager, supervisor Melissa Minor (a/k/a Melissa Endings) and three co-workers.

**ANSWER:**    CMSC admits the allegations of paragraph 51.

52.    At the March 22, 2012 meeting defendant through its manager informed plaintiff that her employment with defendant was terminated.

**ANSWER:**    CMSC admits the allegations of paragraph 52.

53.    Plaintiff at all times relevant hereto had a good faith and honest belief that defendant was preparing to sell meat to the public that was unfit, unsafe and dangerous for human consumption and that such sales would be in violation of statutory and common law.

**ANSWER:**    CMSC denies the allegations of paragraph 53.

54.    Defendant suspended/terminated plaintiff's employment in November 2011 and then terminated or re-terminated plaintiff's employment in March 2012 as direct and proximate result of plaintiff's objections to defendant's repackaging and preparing for sale the returned meat, in retaliation for plaintiff's reporting to local, state, and/or federal officials plaintiff's belief that defendant was violating one or more state or federal laws, rules and regulations.

**ANSWER:**    CMSC denies the allegations of paragraph 54.

55.    It is the strong public policy of the State of Illinois that meat packaging companies sell for human consumption only meat which is safe and fit for human consumption; this strong public policy is found, *inter alia,* in the Wholesome Meat Act of 1967, the Illinois Meat & Poultry Inspection Act (225 ILCS 650/1 et seq.), the Food Safety Modernization Act (21 USC 2201 et seq.) and the Federal Meat Inspection Act (FMIA) (21 USC 602 et seq.).

**ANSWER:**    CMSC admits that Plaintiff has cited existing Illinois and federal statutes in paragraph 55.  Except as specifically admitted, CMSC denies the allegations of paragraph 55.

56.    The State of Illinois through its Department of Agriculture regulates meat production by licensing and inspecting certain facilities to ensure consumers receive wholesome, properly identified meat and poultry products by inspecting slaughter and

processing facilities.

**ANSWER:**   CMSC admits the allegations of paragraph 56.

57.   The federal government through its Department of Agriculture regulates meat production and through its enforcement of the FMIA, which specifically states: "Meat and meat food products are an important source of the Nation's total supply of food. It is essential in the public interest that the health and welfare of consumers be protected by assuring that meat and meat food products distributed are wholesome, not adulterated and properly marked, labeled, and packaged." 21 USC Section 602.

**ANSWER:**   CMSC admits the allegations of paragraph 57.

58.   The public policy which demands that food sold to consumers be safe and fit for human consumption "strikes at the heart of a citizen's social rights, duties and responsibilities."

**ANSWER:**   CMSC states that paragraph 58 is a legal conclusion to which no answer

is required.  To the extent an answer is deemed necessary, CMSC denies the allegations of

paragraph 58.

59.   It is the strong public policy of the State of Illinois to protect individuals from serious harm and death and such public policy can be found, *inter cilia,* in Illinois common law and multiple statutes.

**ANSWER:**   CMSC states that paragraph 59 is a legal conclusion to which no answer

is required.  To the extent an answer is deemed necessary, CMSC denies the allegations of

paragraph 59.

60.   Consumption of meat which is unfit and/or unsafe for human consumption may result in illness, disability, and death.

**ANSWER:**   CMSC admits the allegations of paragraph 60.

61.   Since at least 1907, the State of Illinois has passed laws regulating meat processing, which laws were and are designed to protect the public from the risk of illness, disability, and death associated with unsafe meat processing.

**ANSWER:**    CMSC admits the allegations of paragraph 61.

62.    Defendant's termination of plaintiff's employment violates the clear public policy of the State of Illinois.

**ANSWER:**    CMSC denies the allegations of paragraph 62.

63.    There is a direct and causal connection between plaintiff's taking pictures of the repackaging efforts, the objecting to the repackaging efforts, the reporting to local, state and federal officials defendant's repackaging of returned, spoiled, and rancid meat and defendant's decision to suspend and terminate plaintiff's employment.

**ANSWER:**    CMSC denies the allegations of paragraph 63.

64.    Defendant did not terminate the employment of other employees of defendant who participated without complaint in the repackaging of returned, spoiled, and rancid meat.

**ANSWER:**    CMSC admits that it has not terminated other employees who reworked the returned meat.  Except as specifically admitted, CMSC denies the remaining allegations of paragraph 64.

65.    Defendant did not and has not suspended or terminated the employment of employees who have taken pictures inside the defendant's Beardstown plant.

**ANSWER:**    CMSC denies the allegations of paragraph 65.

66.    The reason given by defendant for the termination of plaintiff's employment was and is pretextual.

**ANSWER:**    CMSC denies the allegations of paragraph 66.

67.    Defendant did not suspend or terminate other employees who had a cellular phone inside the Beardstown plant.

**ANSWER:**    CMSC denies the allegations of paragraph 67.

68.     Defendant terminated plaintiff's employment with defendant in retaliation for and as a direct result of plaintiff objecting to the repackaging efforts, taking pictures of the repackaging efforts, providing pictures of the repackaging efforts to the USDA, and plaintiff's reporting to local, state and federal authorities her good faith belief that defendant was engaging in activity, as alleged herein, that was potentially threatening to the health, safety, and welfare of consumers and the citizens of the State of Illinois.

**ANSWER:**    CMSC denies the allegations of paragraph 68.

69.     As a direct and proximate result of defendant's retaliatory termination of plaintiff's employment, plaintiff has lost wages, income, benefits, and employment opportunities.

**ANSWER:**    CMSC denies the allegations of paragraph 69.

70.     Plaintiff suffered and continues to experience emotional distress, humiliation, embarrassment, and emotional pain and distress as a direct and proximate result of defendant's retaliatory termination of plaintiff's employment.

**ANSWER:**    CMSC denies the allegations of paragraph 70.

71.     As a direct and proximate result of defendant's retaliatory termination of plaintiff's employment, plaintiff has incurred costs and expenses in bringing and pursuing this matter.

**ANSWER:**    CMSC denies the allegations of paragraph 71.

72.     The willful conduct and actions engaged by defendant and defendant's managers and supervisors is such that punitive damages are required to be assessed against defendant.

**ANSWER:**    CMSC denies the allegations of paragraph 72.

73.     It is appropriate, given the serious, intentional, and willful misconduct engaged in by defendant, that significant punitive damages be assessed against defendant to punish defendant and to make an example of this defendant for other entities which absent significant punitive damages may be so inclined.

**ANSWER:**    CMSC denies the allegations of paragraph 73.

## COUNT III
### *(Section 20 Illinois Whistleblower Act)*

1.      Defendant Cargill Meat Solutions Corporation is a national company, incorporated in Delaware, which maintains its headquarters at 151 N. Main Street, Wichita, Kansas.

**ANSWER:**    CMSC admits the allegations of paragraph 1.

2.      Defendant operates a pork processing facility in Beardstown, Illinois, located in Cass County, Illinois.

**ANSWER:**    CMSC admits the allegations of paragraph 2.

3.      Plaintiff is a resident and citizen of Mason County, Illinois.

**ANSWER:**    CMSC admits that its employment records reflect that Plaintiff resided in Mason County, Illinois during her employment.

4.      Defendant is incorporated in Delaware and doing business in Sangamon County.

**ANSWER:**    CMSC admits the allegations of paragraph 4.

5.      Venue is proper in the Circuit Court for the Seventh Judicial District, Sangamon County, Illinois as defendant is doing business in Sangamon County and the unlawful actions alleged herein were committed, *inter alia*, in Sangamon County, Illinois.

**ANSWER:**    CMSC denies the allegations of paragraph 5.

6.      But for defendant's illegal and retaliatory actions plaintiff would have continued to be employed by defendant in Illinois.

**ANSWER:**    CMSC denies the allegations of paragraph 6.

7.      Beginning in January 2008, plaintiff was employed by defendant processing pork at defendant's plant at 8295 Arenzville Road, Beardstown, Illinois.

**ANSWER:**   CMSC admits the allegations of paragraph 7.


8.    Plaintiff, at relevant intervals received periodic raises times [sic], and at all relevant times plaintiff met or exceeded defendant's reasonable job and performance expectations.

**ANSWER:**   CMSC admits that Plaintiff received periodic pay increases during her employment.  Except as specifically admitted, CMSC denies the allegations of paragraph 8.


9.    Plaintiff was cross-trained on multiple duties and jobs at the defendant's Beardstown plant.

**ANSWER:**   CMSC admits the allegations of paragraph 9.


10.    On or about November 14, 2011, one or more shipments (truck loads) of meat were returned by one of defendant's customers to defendant's Beardstown meat processing plant.

**ANSWER:**   CMSC admits the allegations of paragraph 10.


11.    At or near the time that the shipments of meat which were returned to defendant's plant arrived at defendant's Beardstown plant plaintiff was working for defendant.

**ANSWER:**   CMSC admits the allegations of paragraph 11.


12.    On or about November 14, 2011, plaintiff was working at defendant's plant and became aware that one or more truckloads of meat had been returned to defendant.

**ANSWER:**   CMSC admits the allegations of paragraph 12.


13.    All or large portions of the meat that was returned by defendant's customer on or about November 14, 2011 was unfit and unsafe for human consumption.

**ANSWER:**   CMSC lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 12, and therefore denies them.

14.    Plaintiff observed and became aware that portions of the returned meat were spoiled, black, slimy and exuding the recognizable and foul odor of rancid and decomposing meat.

**ANSWER:**    CMSC admits that portions of the returned meat were slimy and exuded a

foul odor.  CMSC lacks knowledge or information sufficient to form a belief as to the truth of

Plaintiff's allegations regarding what she "observed" or "became aware" of and, therefore,

denies them.  Except as specifically admitted, CMSC denies the remaining allegations contained

in paragraph 14.

15.    Defendant instructed a number of defendant's employees to work with and around the returned meat; one or more of plaintiff's co-workers who were working with or around the returned meat became physically ill and nauseous.

**ANSWER:**    CMSC admits some of its employees were instructed to work with and

around the meat.  Except as specifically admitted, CMSC denies the allegations of paragraph 15.

16.    Plaintiff believed and was informed by defendant's managerial employees that the returned meat was from semi-tractor trailer trucks, which had attempted to deliver the meat to one of defendant's customers in Texas; plaintiff was informed the customer refused delivery of the meat and the meat was then returned to defendant's Beardstown plant.

**ANSWER:**    CMSC lacks knowledge or information sufficient to form a belief as to

the truth of the allegations regarding what Plaintiff "believed" and "was informed" of in

paragraph 16, and therefore denies the allegations of paragraph 16.

17.    The packaging information on the returned meet [sic] showed an expiration date of October 26, 2011; plaintiff observed that defendant instructed employees to sort and repackage portions of the returned meat after the expiration date that appeared on the returned meat.

**ANSWER:**    CMSC denies the allegations of paragraph 17.

18.    Defendant instructed plaintiff and other employees to sort and repackage the meat for the purpose of preparing portions of the meat for apparent distribution to other

customers of defendant.

**ANSWER:**   CMSC denies the allegations of paragraph 18.

19.   Plaintiff believed the meat that was being sorted and repackaged was past its expiration date and that the meat was unsafe and not fit for human consumption.

**ANSWER:**   CMSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding what Plaintiff "believed," and therefore denies the allegations of paragraph 19.

20.   Plaintiff observed one or more of defendant's "Quality Assurance" employees (a/k/a "orange hats") conduct an informal and unscientific process to determine what portions of the returned meat would be repackaged and prepared for apparent sale to consumers.

**ANSWER:**   CMSC denies the allegations of paragraph 20.

21.   The informal process used by defendant's "Quality Assurance" employees was to visually inspect the meat, smell the meat, and by some "smell test" purport to determine whether the meat would be repackaged for apparent sale to consumers.

**ANSWER:**   CMSC admits that some of its employees visually inspected and smelled the meat.  Except as specifically admitted, CMSC denies the allegations of paragraph 21.

22.   Plaintiff observed defendant's "Quality Assurance" employees standing over tubs or containers of returned meat and unscientifically attempting to separate the meat; the separated meat was either placed in a tub to be repackaged and apparently ultimately sold to consumers or placed in a second tub to be packaged for what plaintiff was informed would be pet food.

**ANSWER:**   CMSC denies the allegations of paragraph 22.

23.   Plaintiff went to defendant's managers and verbally expressed her strong objection to the process of repackaging meat, a process plaintiff thought to be unsafe and illegal; plaintiff subsequently notified the US Department of Agriculture ("USDA") inspector on site of plaintiff's concerns that meat that was unfit and unsafe for human consumption was being repackaged by defendant and was apparently being prepared to be placed into the stream of commerce for human consumption.

**ANSWER:**   CMSC admits that Plaintiff complained about the meat to CMSC's managers and an inspector on site from the US Department of Agriculture ("USDA").  Except as specifically admitted, CMSC denies the allegations of paragraph 23.

24.    Plaintiff, as part of her objection to the repackaging process, asked the USDA inspector, *"would you feed this meat to your family?"*  In response to plaintiff's objection, the USDA inspector temporarily shut down the line repackaging the returned meat.

**ANSWER:**   CMSC lacks knowledge or information sufficient to form a belief as to the truth of the first sentence of paragraph 24, and therefore denies it.  CMSC denies the remaining allegations of paragraph 24.

25.    Some time subsequent to plaintiff's verbal objection to the USDA inspector and the shut down of the repackaging process, the process of repackaging the returned meat was restarted by defendant's managerial and supervisory employees.

**ANSWER:**   CMSC denies the allegations of paragraph 25.

26.    Plaintiff believes that some portion of the meat, determined by defendant's employees to be acceptable, was repackaged and prepared to be sold to defendant's other customers and ultimately sold to consumers.

**ANSWER:**   CMSC lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding what Plaintiff "believes," and therefore denies the allegations of paragraph 26.

27.    While plaintiff observed the returned meat being repackaged and prepared for sale to customers and ultimately consumers, plaintiff has no direct knowledge that defendant actually sold the meat or whether after becoming aware of plaintiff's objections and subsequent report to the USDA defendant abandoned its apparent intent to sell the meat to customers and ultimately to consumers.

**ANSWER:**   CMSC admits Plaintiff has no knowledge that defendant sold the meat to customers.  Except as specifically admitted, CMSC denies the allegations of paragraph 27.

28.     Defendant had a significant financial incentive to repackage the unfit and unsafe meat and to sell it to consumers.

**ANSWER:**     CMSC denies the allegations of paragraph 28.


29.     Plaintiff, based on conversations with defendant's managers, believes the meat determined by defendant's "Quality Assurance" employees to be unacceptable for human consumption was processed into pet food.

**ANSWER:**     CMSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29, and therefore denies it.


30.     Plaintiff, in an effort to document the unsafe and dangerous practices engaged in by defendant and to begin the process of reporting defendant's conduct, took three (3) photographs with the camera in her cellular phone; the plaintiff sought to create a visual record of the informal, unscientific, and potentially illegal process used by defendant to separate admittedly rancid meat from meat apparently assessed by defendant to be fit for human consumption.

**ANSWER:**     CMSC admits that Plaintiff took photographs with the camera in her cellular phone.  Except as specifically admitted, CMSC denies the allegations of paragraph 30.


31.     Defendant's managerial employee(s) held a meeting on November 14, 2011 with the USDA inspector and plaintiff during which plaintiff expressed her outrage and grave concerns for public safety as regards the repackaging of meat plaintiff believe [sic] was unfit and unsafe for human consumption.

**ANSWER:**     CMSC denies the allegations of paragraph 31.


32.     At the meeting Plaintiff's supervisor and defendant's managerial employee, Lacy Hall, accused plaintiff of taking pictures of the defendant's process of repackaging the meat.

**ANSWER:**     CMSC admits that its managerial employee, Lacy Hall, asked plaintiff if she took pictures on the floor of the Beardstown facility.  Except as specifically admitted, CMSC denies the allegations of paragraph 32.

33.     Defendant resumed the process of repackaging the returned meat and plaintiff repeated her objections to a process she believed to be illegal and unsafe.

**ANSWER:**     CMSC denies the allegations of paragraph 33.

34.     After the meeting on November 14, 2011, defendant instructed plaintiff to leave work.

**ANSWER:**     CMSC denies the allegations of paragraph 34.

35.     After leaving work on November 14, 2011, plaintiff contacted the U.S. Department of Labor, Occupational Safety and Health Administration (OSHA), and the Mason County Health Department for the purpose of complaining about the process plaintiff thought was unsafe, dangerous and illegal. The health department directed plaintiff to the US Department of Agriculture.

**ANSWER:**     CMSC lacks information or knowledge sufficient to form a belief as to the truth of paragraph 35, and therefore denies it.

36.     Plaintiff filed a complaint with the US Department of Agriculture regarding the repackaging and preparation for sale of meat which plaintiff believed was unfit for human consumption.

**ANSWER:**     CMSC admits Plaintiff filed a complaint with the US Department of Agriculture regarding the returned meat. Except as specifically admitted, CMSC denies the allegations of paragraph 36.

37.     On November 15, 2011, plaintiff reported back to work; plaintiff was initially assigned to the line repackaging the returned and spoiled meat. Plaintiff again objected to the process and defendant's activities in repackaging meat and preparing meat for sale well past the meat's initial expiration date.

**ANSWER:**     CMSC admits that Plaintiff reported to work on November 15, 2011. CMSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff "again objected to the process" and therefore denies that allegation. Except as specifically admitted, CMSC denies the remaining allegations of paragraph 37.

38.    At approximately noon on November 15, 2011, defendant again instructed plaintiff to leave the work site; plaintiff was paid for only one-half day of work of [sic] November 15, 2011 while employees who did not object to the repackaging of the meat were paid for a full day, and on information and belief, some employees worked and were paid overtime.

**ANSWER:**    CMSC admits that employees who worked a full day on November 15, 2011, including Plaintiff, were paid for a full day.  CMSC further admits that to the extent employees worked overtime on November 15, 2011, they were paid overtime.  Except as specifically admitted, CMSC denies the allegations of paragraph 38.

39.    On November 16, 2011, plaintiff reported to work and was initially assigned to a line re-packaging the returned meat which plaintiff continued to believe to be spoiled and unfit and unsafe for human consumption; plaintiff again objected to the process and refused to participate in an activity that she believed to be illegal and in violation of state and/or federal law regarding food packaging, food handling, and food preparation.

**ANSWER:**    CMSC admits that Plaintiff reported to work on November 16, 2011. CMSC lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff "again objected to the process" and therefore denies it.  Except as specifically admitted, CMSC denies the remaining allegations of paragraph 39.

40.    On November 16, 2011, after receiving plaintiff's objections, the defendant reassigned plaintiff to a different line processing fresh meat; plaintiff performed these job assignments in a manner consistent with defendant's reasonable job expectations.

**ANSWER:**    CMSC denies the allegations of paragraph 40.

41.    Plaintiff, while on defendant's job site, observed that the spoiled meat was "inspected" in a cursory manner and determined in an unscientific manner – a smell and visual inspection process – whether it should be repackaged and resold to defendant's customers; plaintiff further observed handling and repackaging processes that permitted unsafe contamination of areas that were required by law, rule, and regulation to remain uncontaminated.

**ANSWER:**    CMSC denies the allegations of paragraph 41.

36

42.    Plaintiff believed that the meat being repackaged and prepared for sale was well passed its expiration date and could not reasonably have been deemed fit and safe for human consumption.

**ANSWER:**   CMSC lacks knowledge or information sufficient to form a belief as to the truth of the allegations about what Plaintiff "believed" in paragraph 42, and therefore denies it.

43.    Defendant's Human Resources Manager Robert Hargrove called plaintiff into a meeting and because of plaintiff's repeated objections to the defendant's process of repackaging the returned meat Hargrove made a number of threats against plaintiff; the threats against plaintiff included, *inter alia*, a threat of incarceration in federal prison, job termination, loss of plaintiff's pending workers compensation claim and "loss of everything you have."

**ANSWER:**   CMSC denies the allegations of paragraph 43.

44.    On November 23, 2011, plaintiff communicated with a governmental agency, the USDA, by e-mailing USDA employee and representative Mark Tevler advising him that defendant was repackaging meat, which plaintiff had reasonable cause to believe was spoiled, unsafe, and unfit for human consumption.

**ANSWER:**   CMSC admits it is aware that Plaintiff communicated with the USDA during November 2011.  CMSC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 44, and therefore denies them.

45.    On November 23, 2011 plaintiff provided the USDA with the three pictures taken by plaintiff of defendant's unsafe and potentially illegal repackaging process.

**ANSWER:**   CMSC admits it is aware that Plaintiff provided the USDA with photographs she had taken.  CMSC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 45, and therefore denies them.

46.    On November 28, 2011, defendant met with plaintiff and had in its possession the information and photographs plaintiff had previously provided to the USDA.

**ANSWER:**   CMSC denies the allegations of paragraph 46.


47.   On November 28, 2011, defendant either suspended plaintiff without pay or terminated plaintiff's employment; plaintiff never returned to work with defendant after November 28, 2011.

**ANSWER:**   CMSC admitted it suspended plaintiff without pay on November 28, 2011

and that plaintiff never returned to work with CMSC after November 28, 2011.   Except as

specifically admitted, CMSC denies the allegations of paragraph 47.


48.   Several months following November 28, 2011, plaintiff received a letter dated March 14, 2012 advising her that her employment status was in jeopardy allegedly due to a claim of a lack of response to telephone calls from defendant's human resource manager Robert Hargrove.

**ANSWER:**   CMSC admits the allegations of paragraph 48.


49.   Between November 28, 2011 to March 14, 2012, plaintiff had received no telephone calls from defendant's human resource manager; the claim by Hargrove that Hargrove had called plaintiff's phone was and is false and pretextual; the March 14, 2012 letter was created to manufacture a reason unrelated to plaintiff's protected activity to justify termination of plaintiff's employment.

**ANSWER:**   CMSC denies the allegations of paragraph 49.


50.   Plaintiff, by telephone, immediately responded to the March 14, 2012 letter and defendant instructed plaintiff to attend a meeting at the workplace.

**ANSWER:**   CMSC admits that Plaintiff responded to the March 14, 2012 letter and

CMSC instructed her to attend a meeting in the workplace.   CMSC denies the remaining

allegations of paragraph 50.

51.   On March 22, 2012, plaintiff attended a meeting at defendant's meat processing plant; participating in the meeting were defendant's human resource manager, supervisor Melissa Minor (a/k/a Melissa Endings) and three co-workers.

**ANSWER:**   CMSC admits the allegations of paragraph 51.

52.   At the March 22, 2012 meeting defendant through its manager informed plaintiff that her employment with defendant was terminated.

**ANSWER:**   CMSC admits the allegations of paragraph 52.

53.   Plaintiff at all times relevant hereto had a good faith and honest belief that defendant was preparing to sell meat to the public that was unfit, unsafe and dangerous for human consumption and that such sales would be in violation of statutory and common law.

**ANSWER:**   CMSC denies the allegations of paragraph 53.

54.   Defendant suspended/terminated plaintiff's employment in November 2011 and then terminated or re-terminated plaintiff's employment in March 2012 as direct and proximate result of plaintiff's objections to defendant's repackaging and preparing for sale the returned meat, in retaliation for plaintiff's reporting to local, state, and/or federal officials plaintiff's belief that defendant was violating one or more state or federal laws, rules, and regulations.

**ANSWER:**   CMSC denies the allegations of paragraph 54.

55.   It is the strong public policy of the State of Illinois that meat packaging companies sell for human consumption only meat which is safe and fit for human consumption; this strong public policy is found, *inter alia,* in the Wholesome Meat Act of 1967, the Illinois Meat & Poultry Inspection Act (225 ILCS 650/1 et seq.), the Food Safety Modernization Act (21 USC 2201 et seq.) and the Federal Meat Inspection Act (FMIA) (21 USC 602 et seq.).

**ANSWER:**   CMSC admits that Plaintiff has cited existing Illinois and federal statutes

in paragraph 55.  Except as specifically admitted, CMSC denies the allegations of paragraph 55.

56.   The federal government through its Department of Agriculture regulates meat production and through its enforcement of the FMIA, which specifically states: "Meat and meat food products are an important source of the Nation's total supply of food.  It is essential in the public interest that the health and welfare of consumers be protected by assuring that meat and meat food products distributed are wholesome, not adulterated and properly marked, labeled, and packaged." 21 USC Section 602.

**ANSWER:**   CMSC admits the allegations of paragraph 56.

57.   Consumption of meat which is unfit and/or unsafe for human consumption may result in illness, disability and death.

**ANSWER:**   CMSC admits the allegations of paragraph 57.

58.   Since at least 1907, the State of Illinois has passed laws regulating meat processing, which laws were and are designed to protect the public from the risk of illness, disability, and death associated with unsafe meat processing.

**ANSWER:**   CMSC admits the allegations of paragraph 58.

59.   There is a direct and causal connection between plaintiff's taking pictures of the repackaging efforts, the objecting to the repackaging efforts, the reporting to local, state and federal officials defendant's repackaging of returned, spoiled, and rancid meat and defendant's decision to suspend and terminate plaintiff's employment.

**ANSWER:**   CMSC denies the allegations of paragraph 59.

60.   Defendant did not terminate the employment of other employees of defendant who participated without complaint in the repackaging of returned, spoiled, and rancid meat.

**ANSWER:**   CMSC admits that it has not terminated other employees who reworked the returned meat.  Except as specifically admitted, CMSC denies the remaining allegations of paragraph 60.

61.   Defendant did not and has not suspended or terminated the employment of employees who have taken pictures inside the defendant's Beardstown plant.

**ANSWER:**   CMSC denies the allegations of paragraph 61.

62.   The reason given by defendant for the suspension and/or termination of plaintiff's employment was and is pretextual.

**ANSWER:**   CMSC denies the allegations of paragraph 62.

63.   Defendant did not suspend or terminate other employees who had a cellular phone inside the Beardstown plant.

**ANSWER:**   CMSC denies the allegations of paragraph 63.

64.     Defendant terminated plaintiff's employment with defendant in retaliation for and as a direct result of plaintiff objecting to and refusing to participate in the repackaging efforts, taking pictures of the repackaging efforts, providing pictures of the repackaging efforts to the USDA, and plaintiff's reporting to local, state and federal authorities her good faith belief that defendant was engaging in activity, as alleged herein.

**ANSWER:**     CMSC denies the allegations of paragraph 64.


65.     As a direct and proximate result of defendant's discrimination against plaintiff in violation of the Illinois Whistleblower Act, plaintiff has lost wages, income, benefits, and employment opportunities.

**ANSWER:**     CMSC denies the allegations of paragraph 65.


66.     Plaintiff suffered and continues to experience emotional distress, humiliation, embarrassment, and emotional pain and distress as a direct and proximate result of defendant's violations of the Illinois Whistleblower Act.

**ANSWER:**     CMSC denies the allegations of paragraph 66.


67.     As a direct and proximate result of defendant's violations of the Illinois Whistleblower Act plaintiff has incurred legal fees, attorneys' fees, costs and expenses in bringing and pursuing this matter.

**ANSWER:**     CMSC denies the allegations of paragraph 67.


68.     In violation of the Illinois Whistleblower Act, defendant discriminated against plaintiff, threatened plaintiff, suspended/terminated plaintiff's employment and then (re)terminated plaintiff's employment with defendant as direct and proximate result of plaintiff's refusal to participate in actions and activities which plaintiff believed to be in violation of state and/or federal laws, rules and regulations.

**ANSWER:**     CMSC denies the allegations of paragraph 68.


69.     In violation of the Illinois Whistleblower Act defendant discriminated against plaintiff and terminated plaintiff's employment with defendant in retaliation for and as a direct result of plaintiff having provided certain pictures to a federal agency and having reported to local, state and federal authorities her good faith belief that defendant was in violation of state and/or federal law.

**ANSWER:**   CMSC denies the allegations of paragraph 69.

70.   As a direct and proximate result of defendant's violations of the Illinois Whistleblower Act and termination of plaintiff's employment, plaintiff has incurred attorneys' fees, costs and expenses in bringing and pursing this matter.

**ANSWER:**   CMSC denies the allegations of paragraph 70.

## AFFIRMATIVE DEFENSES

1.   CMSC had legitimate, non-pretextual and non-retaliatory reasons for suspending Plaintiff and terminating Plaintiff's employment.

2.   Plaintiff's claims for economic damages must be reduced by her actual earnings and the amounts she could have earned with reasonable diligence.

3.   Plaintiff's claim for damages, if any, is barred because she failed to mitigate damages.  For example, Plaintiff rejected an unconditional offer of reinstatement made to her on March 22, 2012, the same day as her termination from the Plant.

4.   Defendant at all times acted in good faith and with reasonable grounds for believing it was not violating Illinois common law or the Illinois Whistleblower Statute.

5.   Plaintiff would have been terminated for her violation of company policy regardless of any alleged protected activity.

6.   Plaintiff's common law retaliatory discharge claim is preempted by the Illinois Whistleblower Statute.

7.   The law, allegations, facts and circumstances of this case do not warrant or provide for the imposition of punitive damages.

Dated:  May 29, 2013

Respectfully submitted,

/s/ *Jenny Goltz*
Joseph E. Tilson
Jenny R. Goltz
MECKLER BULGER TILSON MARICK &
PEARSON LLP
123 N. Wacker Dr., Suite 1800
Chicago, Illinois 60606
(312) 474-7900 (tel)
(312) 474-7898 (fax)
Attorneys for Defendant

M:\15774\pleading\Answer (5-29-13).rtf

43

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on May 29, 2013, a copy of Defendant's **Answer to Verified Complaint** was filed electronically with the Clerk of the Court using the CM/ECF system.  The parties may access this filing through the Court's electronic filing system, and notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.

Lee W. Barron
Kim L. Kirn
112 Front Street
Alton, IL  62002


/s/     Jenny Goltz_____
Jenny Goltz
Attorney for Defendant